SUCCESSION OF NICHOLAS JOSEPH ERARD.

Where an owner of ground, an undertaker or builder by trade, borrows a sum of money for the purpose of building thereon, the amount to be advanced to him according to the progress of the work, executing a mortgage on the property improved to secure its re-payment, and employs workmen to construct the buildings under his own directions, the latter will, under art. 2743 of the Civil Code, be entitled to a privilege for the payment of their labor on the building constructed by them, entitling them to be paid in preference to the mortgage creditor. It is only where there is an undertaker interposed between the owner and his workmen, that arts. 2744 and 2745 of the Civil Code are applicable. Where workmen are employed by the proprietor himself, they are put on the same footing, and allowed the same privilege as an undertaker.

APPEAL from the Court of Probate of New Orleans, *Bermudez,* J.

*Grima,* for the appellants.

*D. Seghers,* for the opponents.

SIMON, J. By virtue of the 13th section of the charter of the Citizens Bank, Nicholas Joseph Erard, on the 26th of July, 1838, obtained from said Bank the loan of a sum not exceeding $7200, for the purpose of building two houses on certain lots of ground belonging to the borrower, with the express agreement, that no part of said loan should be paid to him until the buildings should have been commenced, and should be progressing; and then only to an amount not exceeding the value of the work actually done on the day of such payment, and so on, from time to time, as the buildings should progress. For the purpose of securing the reimbursement of the amount loaned, with all the interest accruing thereon, the borrower executed an act of mortgage in favor of the Citizens Bank, on several lots of ground described in the said

act; which, containing such stipulations as the nature of the con-
tract required in relation to the use of the money loaned, and to
the payments to be made progressively, was duly recorded in the
office of the Recorder of Mortgages.

It appears that Erard was an undertaker by trade ; and, there-
fore, as owner of the lots on which the houses were to be erected,
he had only to employ workmen and laborers to work under his
directions in the construction of the buildings, with the materials
which he was to furnish. As owner of the property, and as his
own undertaker, he had no need of making any special contract
with any other undertaker, as he was himself perfectly competent
to conduct and superintend the construction of the buildings, and
to have them executed by workmen immediately employed by him-
self. Accordingly, he employed three workmen, (the opponents
in this cause,) who went to work under his direction, on the 18th
of August, 1838, and who, without any other assistance but that
of their apprentices, *made the work*, as one of the witnesses says,
*with their own hands*, and labored without interruption until the
death of Erard, which took place on the 9th of April, 1839, when
the work was stopped for want of materials.

In the mean time, payments were made to Erard by the Citizens
Bank, on the report of their appraiser and superintendant of the
buildings, to wit : one of $2000, on the 29th of October, 1838, and
another of $4000, on the 1st of December following ; which sums
were to be applied to the payment of the expenses, according to the
value of the work, as specified in the contract. It further ap-
pears from the record, that the whole work done by the oppo-
nents, from the 18th of August, 1838, to the 9th of April, 1839,
was worth seventeen hundred dollars, to wit: $804 50, for the work
done previous to the 1st of December, 1838, and $965 50, for
that done after that date. On the aggregate amount of which,
$940 50 only having been paid by the deceased to the opponents,
there remains due a balance of $829 50, for which the latter
obtained a judgment against Erard's executors.

The evidence further shows, that after Erard's death, the two
houses having remained unfinished until March, 1841, the two
lots and buildings thereon erected, in the state in which they were
at the time of the death of the deceased, were sold on said day by

the Register of Wills, and purchased by the Citizens Bank: one of them for $3000, and the other for $3400. The Bank afterwards finished the buildings, the cost of which amounted to a further sum of $2800.

It further appears that, on the 31st of August, 1841, the executors filed a tableau of distribution of the moneys belonging to Erard's succession, allowing to the Citizens Bank, after deducting their contribution to the general charges and privileges, the whole proceeds of the sale of the two lots and houses, and also the proceeds of a third lot of ground included in the act of mortgage. To this tableau, the three workmen filed their opposition, claiming a privilege on the value, or proceeds of the sale of the property, for the amount due them for their labor, from which said property had been benefited, and praying that a proportionate and relative estimation (*ventilation*) be made of said property, according to the 3235th art. of the Civil Code.

Accordingly, two experts were appointed by the court, *a qua*, and in October, 1841, they filed their report, which was homologated by consent of parties, and from which it results that, after deducting the amount of the expenses, ($2800,) incurred for finishing the two houses, they were worth, (for the materials and workmanship,) in the condition in which they were at the time of the probate sale, the sum of $4207 52; and that the proportion to which the opponents were entitled out of the price for which they were sold, amounted to $824 20. Thus, it appears that the payments made by the Bank under the contract, exceeded the value of the work and materials, so far as it had then progressed, by about $1800, to which may perhaps be added a further sum of $965 50, which is the amount of the work done upon the buildings between the date of the last payment, and that of the borrower's death. It seems, therefore, well established, that the whole amount paid by the Bank on the first of December, 1838, was not due at that time under the contract; and that if the payment had been made in the real proportion provided for by said contract, the proceeds of the sale would perhaps have been sufficient to cover and satisfy, both the claim of the Bank, and the privilege of the opponents.

The inferior court took the report of the experts, and the state-

ment made thereon, as the basis of its opinion, and accordingly ordered the tableau of distribution to be amended in conformity with the same, allowing to the parties their respective proportions of the price. From this judgment the Citizens Bank has appealed.

This case is peculiar in its nature; and although we are not ready to assimilate the legal position of the parties to this controversy, and the rights resulting therefrom, to those of persons whose contract is, on the one hand, that of an undertaker, who obligates himself to construct a house for another, and on the other hand, that of a proprietor, who is bound to pay the amount of the price of the building, according to the stipulations contained in the contract, we think that the conclusion to which the Judge, *a quo*, has arrived, is correct, and that the opponents are entitled to recover the amount to them allowed in the amended tableau of distribution. Erard, though an undertaker by trade, cannot be considered as such in relation to the Citizens Bank, nor with regard to the workmen by him employed. He was the owner of certain lots which he wished to improve, and a borrower of money from the Citizens Bank, in whose favor he consented to, and executed a mortgage on the property which he possessed, for the purpose of securing the re-payment of the sum loaned. The stipulation contained in the act of mortgage was inserted in conformity with the 13th section of the charter of the Bank, and with a view to apply the funds borrowed to increasing the value of the property, and thereby to obtain a greater security for the reimbursement of the sum, to secure which, the value of the property mortgaged was originally inadequate and insufficient. But the Bank was not the owner of the lots. Its money was only loaned upon the conditions imposed by the contract; and, if so, it was perhaps the duty of the Bank to ascertain that the funds proceeding from the loan were used for, or applied to the object for which it was intended. However this may be, Erard was the owner, and as such, he had a right to employ workmen to construct his buildings under his direction. There was no undertaker between him and his workmen, and it is only, in the latter case, that the rule pointed out by arts. 2744 and 2745 of the Civil Code, can properly apply.

Art. 2743 of that Code provides, that " *workmen employed im-*

*mediately by the owner in the construction of any building, have a privilege for the payment of their labor thereon.*" This is the same privilege which the same law grants to undertakers; and it is obvious, that the intention of the law maker was, to establish a distinction between the exercise of the rights of workmen, when they are employed by the owner, and the manner in which they should be enforced when their work has been done under the direction of an undertaker; that is to say, to provide for the case in which workmen, employed immediately by a proprietor, in the absence of an undertaker, should have to exercise their legal rights against the former, for the recovery of the price of their manual labor. In such case they are put on the same footing with undertakers, and are allowed the same kind of privilege. It matters not whether the payments made by the Bank, were made to the owner in anticipation or not. The privilege exists with the same force as that of an undertaker; it may be exercised in the same manner; and it does not lie in the mouth of the mortgage creditors to say that the opponents are deprived of their remedy or right of recovery, because the institution thought proper to advance to the owner of the property improved, a larger amount than the property, in its unfinished state, was able to secure. Under the privilege allowed by law to the opponents, the proportionate estimation (*ventilation*) ordered, by the inferior, tribunal was properly made; and we are unable to see any reason why, on this point, the judgment rendered thereon should be disturbed.

But it has been insisted, that the opponents are not entitled to any privilege, because their contract was not reduced to writing, and recorded as required by art. 2746 of the Civil Code, which provides, that "*no agreement or undertaking* (*tout devis ou marché*) *for work* exceeding five hundred dollars, which has not been reduced to writing, and registered with the Recorder of Mortgages, shall enjoy the privilege above granted." This law seems to apply specially to such agreements or undertakings for work as may be reduced to writing; such work, for instance, as is undertaken by the job. But, in this case, the amount claimed by the three opponents does not exceed, for each of them, the sum of $500; and if it did, we are not prepared to say, that the law relied on should govern the rights of workmen, or laborers, who are employed by

the day or week, and who are to be paid by the owner every day, or every week, as the work progresses.  Indeed, such workmen or laborers are generally called on and retained to furnish their manual and daily labors ;  they have nothing to do with any con- tract for building, and they follow the instructions of the under- taker, or those of the owner, when employed immediately by him. The time during which their employment is to last is generally unknown ;  they may be dismissed at the will or pleasure of their employers ;  and it would be a strange doctrine to require them to reduce to writing, and to record a statement of the number of days, or of weeks, (generally unknown,) during which they may be employed to work under the directions of the owner or of the un- dertaker.  This, in our opinion, cannot be the object of the law ; and from the terms of the article above quoted, and of the 2339th and 2340th articles of the same Code, we are rather inclined to think that they are applicable to another class of workmen—to those who are employed by virtue of a contract, or to work by the job, or for a fixed price ;  and that they have no bearing upon those who, being employed immediately by the owner to work, by the day, or by the week, are to be paid by him as the work progresses.

Furthermore, how could this objection avail the Bank, which was well aware when the contract of mortgage was executed, that, although the borrower was an undertaker by trade, he could not construct his buildings without workmen or laborers ?  Surely, the Bank could not expect that, if the sums advanced to the owner were not applied to the object of the contract, by paying the daily or weekly salaries of the workmen immediately employed by him to carry it into execution, the latter should be deprived of the privileged rights to them granted by art. 2743 of the Civil Code.  As we have already said, this kind of privilege exists in contradistinction with the rights allowed to those who are em- ployed by undertakers, and who are protected by the provisions of arts. 2744 and 2745 of the same Code ; and under the circum- stances it must be enforced, whether recorded or not.

*Judgment affirmed.*